**UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF MONTANA**

In re

**WILLIAM MICHAEL FEATHERSTON,**
**PHYLLIS B. FEATHERSTON,**

Case No. **07-60296-13**

Debtors.

In re

**CODY RAYMOND GLIKO**
**JILL COLLEEN GLIKO,**

Case No. **07-60441-13**

Debtor.

# MEMORANDUM OF DECISION

At Butte in said District this 28th day of September, 2007.

The above-captioned Chapter 13 bankruptcy cases have been consolidated for a decision

regarding the Chapter 13 Trustee's objections to confirmation of their respective Chapter 13

Plans on the grounds they fail to satisfy the "disposable income" requirement of 11 U.S.C. §

1325(b) by deducting expenses from the proceeds from liquidation of business assets, and in

Case No. 06-60296-13 deducting proceeds from the sale of United States Treasury Strips,

discontinued income from cattle sales, and money given to their adult child for college expenses,

from their disposable income.  Both matters have been heard and briefs have been submitted, and

1

they are ready for decision.  For the reasons set forth below, the Trustee's disposable income objection to confirmation in Case No. 07-60441-13 will be overruled and Glikos' Chapter 13 Plan filed on May 9, 2007, confirmed.  The Trustee's objection in Case No. 07-60296-13 will be sustained with respect to the college expenses for their adult child and deduction of discontinued cattle income from their disposable income, but otherwise overruled with respect to the U.S. Treasury Strips and cattle expenses.

This Court has exclusive jurisdiction of these Chapter 13 cases under 28 U.S.C. § 1334(a).  Confirmation of plans are core proceedings under 28 U.S.C. § 157(b)(2)(L).  This Memorandum of Decision includes the Court's findings of fact and conclusions of law under F.R.B.P. Rule 7052.

At issue in both cases is whether expenses incurred in preparing assets for sale may be deducted from sale proceeds when computing "current monthly income" ("CMI") under 11 U.S.C. § 101(10)(A)(A).  In Case No. 07-60296-13  On May 31, 2007, Featherstons and the Chapter 13 Trustee filed an agreed statement of the following pending issues:

1.  Whether the Debtors should be allowed to deduct expenses for their college aged children on Form 22C, line 59?

2.  Whether deductions for one time farm income and related expenses should be allowed on Form 22C, line 59?

3.  Whether the 4,000 U.S. Treasury strips should be counted as income for the Debtors?

The confirmation hearing in the Featherston Chapter 13 case, No. 07-60296, was held on May 22, 2007.  Phyllis B. Featherston ("Phyllis") appeared and testified, and Debtors were represented by Gary S. Deschenes ("Deschenes") of Great Falls, Montana.  The Chapter 13

2

Trustee Robert G. Drummond appeared in opposition.   Exhibits ("Ex.") 1 and A were admitted into evidence.  At the conclusion of the parties' cases-in-chief the Court granted the parties time to file briefs, after which the matter of confirmation would be taken under advisement.  The briefs have been filed and reviewed by the Court, together with the facts and applicable law.

In the Gliko case, No. 07-60441-13, the hearing on confirmation was held at Great Falls on July 26, 2007.  Glikos were represented at the hearing by attorney Kraig C. Kazda of Great Falls, and the Chapter 13 Trustee appeared in opposition.  No testimony or exhibits were admitted, and the Court granted the parties 10 days to file a Stipulation of Facts.  Counsel advised the Court that they would rely on the briefs submitted by the parties in Case No. 07-60296-13.  The parties filed their Stipulation of Facts in No. 07-60441-13, which are set forth below, and the Stipulation was approved.

**Glicko Facts – Case No. 07-60441-13.**

The following facts were submitted by written Stipulation between the parties in Case No. 07-60441-13:

1.  The Debtors, Cody and Jill Gliko, filed their Chapter 13 bankruptcy case on April 30th, 2007.

2.  The Debtors filed their Schedules and Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income along with their Schedules on May 9, 2007.  (Docket Nos. 5, 6, and 7).

3.  The Debtors owned and operated a trucking business, as a sole proprietorship, from August 1999 until October 2006.  The name of this business was 7 Bar Trucking.

4.  The only remaining assets of 7 Bar Trucking after October 226 were two trailers.  The

Debtors sold these two trailers in March 2007 receiving $5,000.00.  This money was used to pay for the expenses that the Debtors incurred in preparing these trailers for sale.

5[1].  The Debtors' Form 22C did not reflect income in the amount of $5,000.00 derived from the sale of the trailers within the 6 month period prior to the filing of the bankruptcy case.

6. The Trustee filed an objection to the Debtors' Plan asserting that the Debtors were failing to commit 100% of their disposable income to fund the Plan as required by 11 U.S.C. § 1325(b)(1)(B) & (b)(2) [2] in that the proceeds from the sale of the trailers was not included in Form 22C.  Additionally, the Trustee, relying upon 11 U.S.C. § 1325(b)(2)(B), alleged that the Debtors were not allowed to offset from this income the business expenditures associated with the sale of the trailers since these expenses were not required for the continuation, preservation or operation of the business.  (Docket No. 12).

7. Debtors subsequently amended Form 22C to include the $5,000.00 of business income on line 3(a) of Form 22C.  Included with this amendment, on line 3(b) of Form 22C, Debtors listed expenditures of $4,971.52 associated with the sale of the trailers.  (Docket No. 16).

8.  The parties stipulate that the facts relevant to deciding the merits of the disposable income objection are fully set forth in their Stipulation and that the Court should enter its order on confirmation of the Debtors' proposed Chapter 13 Plan dated May 9, 2007, based upon these stipulated facts.

---

[1]The Stipulation's enumeration of facts after number 4 reverts to number 3, which has been renumbered as "5" and consecutively thereafter.  The Court also corrected certain other errors in the Stipulation.

[2]The Trustee's objection cites "§ 1325(b)(1)(B)(2)", which is a typo since no such numbered subsection exists.

4

**Featherston Facts** – **Case No. 07-60296-13.**

The Debtors William Featherston ("William") and Phyllis Featherston ("Phyllis") are married. William is self-employed as a truck driver for D & J Livestock Trucking. Phyllis is employed as an assistant manager of an electronics company in Great Falls. They owned cattle until the Fall of 2006, within six (6) months of the filing of their bankruptcy petition, during which they liquidated their herd after their cattle developed trichinosis. Featherstons left their family ranch after 21 years due to a family dispute. Now they live on 20 acres where they built a house. Phyllis testified that, within six (6) months of the filing of their petition, William received a bonus in December 2006 in the amount of $1,740 in three separate bonus checks, which worked out to $290 per month.

Featherstons filed a joint Chapter 13 petition on March 29, 2007, with their Schedules, Statement of Financial Affairs, Form 22C and other documents. Schedule B lists Featherstons' personal property, but does not list any Treasury Strips, a type of security issued by the United States Treasury. Phyllis testified that the Treasure Strips represent funds they and their children had put aside for their children's college education. She testified that they liquidated their children's education accounts and purchased Treasury Strips in 1995, with one account in the children's names and one account which was not in their names but is still for their benefit. Ex. A is a statement of account for William at US Bancorp Piper Jaffray ("Piper Jaffray"), and it shows on the last two pages that certain of the Treasury Strips were held in accounts by William named as custodian for Travis, Dallas L. Featherston, and Kody R. Featherston. Other accounts are labeled "Special #" in William's name. Under questioning by the Court, Phyllis testified that their investment advisor suggested that they put the Treasury strips in their names, not their

children's names.  She testified that the Treasury Strips do not represent her and William's money or income, but is their children's money.

Schedule I lists one of Featherstons' son, age 21, as a dependent.  Phyllis testified that they helped their kids through college for 8 years and have 1 son, Travis, left in college who attends Montana State University ("MSU") in Bozeman, Montana.  Schedule I also lists Featherstons' combined current net monthly income from employment in the amount of $5,146.08, after payroll deductions for taxes, insurance and Phyllis' 401(k) plan ($359.02) from their combined gross income.  $100 is listed at Schedule I, no. 7 as William's additional income from operation of business or profession or farm, without any additional detail attached.  Phyllis testified that the $100 extra income is from William's custom farming but he no longer does much custom farming.  On redirect examination Phyllis testified that William did not do any custom farming in 2006, and did not incur any machinery expenses for custom farming during the 6 months prior to the petition date.

Schedule J lists Featherstons' current monthly expenditures in the total amount of $5,266.50, including a $350 monthly payment for support of dependents not living at home, and car payments in the sum of $430 and a Taurus lease of $268.  Phyllis testified that in addition to the $350 in support for her son at college they have a vehicle payment for his vehicle.  The last line of Schedule J shows a negative monthly net income in the amount of $120.42.

Featherstons' Statement of Financial Affairs ("SFA") lists their income at Question 1, including income last year in the amount of $187.00 for Herbalife, $0.00 last year from cattle but $3,805.79 cattle income the current year to date.  Question 10 lists transfers, including transfers of US Treasury Strips on 10/25/2006 with a value in the amount of $3,776.11, and on 6/26/2006,

7/28/2005 and 11/15/2005 described as "Son for College".   Phyllis testified that since a son

recently graduated, they are down to a single son in college, Travis, and they send him $350 per

month for expenses.  She testified that Travis also works at a part time job and carries a full

course load.  Phyllis testified that the Treasury Strips are in her and William's name but that the

Treasury Strips came from their kids' funds and is their property.  Featherstons' SFA at Question

14, "Property Held for Another Person" that the debtor holds or controls, is marked "None".

When they sold the Treasury Strips, Phyllis testified, they turned the proceeds back over

to their kids.  Phyllis testified that they reported long term capital gains from the sale of the

Treasury Strips on their own tax return, Ex. 1, and paid a tax on the sale, but they did not list any

income from the Treasury Strips on their Form 22C because they were their kids' funds.

Livestock sales are also listed on the SFA at Question 10 dated 11/20/2006 in the amount

of $1,044.25, and 11/24/2006 in the amount of $297.71, within 6 months of the petition date.

Phyllis testified that the 11/20/2006 sale was probably 4 head of cattle and the 11/24/2006 was

for 1 head.  Feathersons' 2006 federal tax return, Ex. 1, includes a Schedule F, "Profit or Loss

from Farming" with the principal product at line A stated as "Beef Cattle", but Phyllis testified

that Schedule F shows no income from sale of livestock, and the cattle sale proceeds are shown

later in the forms related to capital gains.

Featherstons' Form 22C includes at line 2, gross wages, both William's and Phyllis'

wages.  Phyllis testified that it did not include their income from custom farming or Herbalife

sales, because she did not know if they had any income from custom farming or Herbalife in the

past year.  She testified that William performed custom farming for others only when his

schedule allows.

7

Line 3c of Form 22C lists "Business Income", monthly income based upon cattle sales, in the net amount of $239.17 after deducting $432.40 in ordinary and necessary business expenses from $671.57 in gross receipts. Phyllis testified that the cattle sales were a 6 month average from September to February 2007 when they filed their petition, and that the $432.40 was actually paid in the 6 months before the petition date, including for their cattle and William's farming on their own hay ground[3], and for maintenance of their equipment. Phyllis testified that they no longer have cattle income or cattle, but were required to include the $239.17 at line 3c because they sold their cattle within 6 months of the date of filing of their petition.

Phyllis was asked on cross examination by the Trustee whether the expenses on line 3b were related to the 5 cattle sold shown by their response to SFA Question10a, and answered that she does not recall what expenses went into line 3b, and that at one time William had cattle out on shares. On redirect examination she testified that William did no custom farming within the 6 months preceding the petition date, and therefore lines 3a and 3b of Form 22C only included cattle income and expenses. The Trustee attempted to elicit testimony from Phyllis relating the expenses on line 3b of Form 22C to the Featherstons' farm expenses listed on Schedule F of their 2006 tax return, Ex. 1, but Phyllis was unable to testify as to any connection except she stated that she took the amount on line 3b on Form 22C from their checkbook, and that they used the same numbers from their checkbook in preparing their tax returns. She testified that Line 3b lists only livestock expenses, not depreciation.

On redirect examination by Deschenes Phyllis testified that her notes regarding livestock

---

[3]She testified that they did not grow any hay to sell in 2006, but "possibly" may grow hay to sell this year.

8

expenses dated from February 2006, and so covered almost all of 2006 not just 6 months. Deschenes responded to the Court's question about whether the period of time on line 3b exceeded 6 months by stating that he took the expenses for producing Featherstons' cattle income, and they were not limited to 6 months prior to the petition.

The total income on line 11 of Form 22C is listed at $7,650.60. Part III of Form 22C established that Featherstons are above-median family income Debtors, so disposable income is determined under 11 U.S.C. § 1325(b)(3), which requires that disposable income is determined in accordance with 11 U.S.C. § 707(b)(2). Part IV of Form 22C calculates allowed deductions under § 707(b)(2), and Debtors list a total of $6,371.41 at line 52. Part V of Form 22C determines disposable income under § 1325(b)(2), and concludes at line 58 with monthly disposable income stated as $1,279.19, which Phyllis testified was before her additional deductions.

Part VI lists additional expense claims of $359.00 for Phyllis' 401(k) contribution, $400.00 in assistance college expenses, and $261.67 in "additional expenses listed on attachment", which are described on the attachment as $22.50 for parking[4] and $239.17 "Subtraction of Cattle Income". Phyllis testified that the $400 college assistance was based on the fact that last year they had 2 sons in college, and this year they have only 1. She testified that during the 6 months prior to the petition their children's actual college assistance expense sometimes exceeded $400, such as during finals when they could not work as much, and sometimes more. She testified that their current college assistance for their remaining son in

---

[4]The Trustee's objection notes the parking expense, but that component of his objection is not addressed in the Trustee's brief and therefore is deemed abandoned.

college is $350, which they entered on Schedule J, line 15, for support of dependents not living at home. They arrived at $350 in assistance for Travis, from $400 when they supported 2 college students, because they used to have Treasury Strips to draw from, but no longer have them.

Phyllis testified that Travis is a second semester junior at MSU and 21 years old, that he is employed at the college, and has both academic scholarships and government student loans, and works full time during the summer break. Phyllis admitted that on their 2006 federal tax return they did not claim a dependent exemption for Travis. Ex. 1. She testified that they did not list Travis as a dependent so that he would be eligible for scholarships and government aid, but that they still consider him a dependent. Phyllis testified that, in addition to the $350 in college assistance for Travis she pays for his health insurance out of her paycheck, and none of the $350 assistance pays for health insurance. Phyllis testified that the subtraction on the addendum for cattle income would be $2,870 for 12 months, and that she pays $22.50 per month for parking at her employment, which is not listed anywhere else.

Featherstons filed their Chapter 13 Plan on April 3, 2007, proposing monthly payments of $250.00 for 60 months, treating their secured creditors Wells Fargo (residence) and Ford Credit (2003 Ford F350 pickup) as unimpaired and providing for a $0 distribution to allowed unsecured claims. Paragraph 1 of their Plan submits their future earnings and other income to the supervision and control of the Chapter 13 Trustee, and paragraph 5 states: "The Debtors shall commit all projected disposable income to the plan and shall report any changes in income to the Trustee."

The Trustee filed objections to confirmation on April 27, 2007, on several grounds. At the hearing the Trustee withdrew his objection to Phyllis' deduction for her 401(k) plan in

10

paragraph 2, and also withdrew his objection at paragraph 5 based on the "best interest of creditors" test, 11 U.S.C. § 1325(a)(4).

## DISCUSSION

**I. Contentions of the Parties**.

The Featherstons argue in their memorandum that the Treasury Strips were purchased with funds earned by their children and placed in separate accounts on their behalf on the advice of their financial advisor, so are not property of the estate and thus not current monthly income (CMI) or disposable income under § 1325(b).  With respect to the cattle income and expenses, Featherstons cite *In re Hardacre*, 338 B.R. 718 (Bankr. N.D. Tex. 2006), *In re Kibbe*, 342 B.R. 411, 414, 415 (Bankr. D. N.H. 2006, *aff'd*, 361 B.R. 302, 315 (1st Cir. BAP 2007), and other cases they describe as the "majority view[5]" that "projected disposable income" must be forward looking to avoid potentially anomalous results associated with a dramatic change in circumstances in the 6 months immediately pre-petition.  They argue that they liquidated their cattle herd within 6 months of their petition date, and that income was doubled on Form 22C giving them an unrealistic, imaginary income which should not be included in their projected disposable income under § 1325(b)(1)(B).  Featherstons describe their expenses relating to the liquidation of cattle a non-issue since the income should not be included, and their cattle business is no longer active so the expenses are unnecessary for their future projections.

---

[5]The 1st Circuit Bankruptcy Appellate Panel in *Kibbe* surveyed the two competing interpretations of the terms "projected disposable income", but did not characterize them as a majority and minority view, but rather simply as the "first camp" and the "second camp".  In *In re Meek*, 370 B.R. 294, 301 (Bankr. D. Idaho 2007), Hon. Terry L. Myers describes the cases following *Hardacre* as "having a more crowded field", but the other position as a "growing minority."  Citing *In re Berger*, 2007 WL 1404403 (Bankr. M.D. Ga.).

11

Regarding the $350 per month which Featherstons give their adult son Travis for college, Featherstons contend that they have assisted each of their sons to pay for their college education, and have only 1 left in college.  They argue that the $350.00 per month is reasonable and necessary for payment of Travis' expenses while he is at college, and therefore should be allowed as a deduction from their income under 11 U.S.C. § 707(b)(2)(A)(ii)(II) because he is a member of their immediate family and he is unable to pay for such expenses, and under § 1325(b)(2)(A).

The Trustee contends that all income from all sources should be included in determining the Featherstons' disposable income under § 1325(b), defined as CMI from 11 U.S.C. § 101(10A) less certain allowed expenses as provided on Form 22C.  The Trustee cites Hon. Eugene R. Wedoff's article "*Means Testing in the New § 707(b)*", Am. Bankr. L.J., Vol 79, Issue 2, p. 231, at 251 that: "Where the CMI differs from the debtor's actual income, the means test provides no mechanism for substituting the actual income."  The Trustee cites this Court's decision in *In re Tranmer*, 355 B.R. 234, 243-45 (Bankr. D. Mont. 2006), quoting *In re Rotunda*, 349 B.R. 324, 329, 330-31 (Bankr. N.D. N.Y. 2006), stating that the Court would apply a mechanical test, in a case involving specific current expenditures.  The Trustee argues that if Debtors have a reduction in income they may propose a modified plan under 11 U.S.C. § 1329 which does not incorporate the disposable income requirement of § 1325(b).  *In re Sunahara,* 326 B.R. 768, 781 (9th Cir. BAP 2005).  But, the Trustee argues, Featherstons should include William's income from his home repair business and Phyllis' income from Herbalife in their Form 22C.

With respect to the cattle expenses the Trustee contends they should not be allowed under § 1325(b) because the cattle have been sold and the expenses are not necessary for the

12

continuation, preservation and operation of the business, and further that their stated expenses are inconsistent with the expenses listed on their tax returns, Ex. 1.  Since Debtors are no longer in the cattle business, the Trustee argues, their liquidation expenses cannot be allowed under § 1325(b) and it is up to Congress to change inequities in the statute.  With respect to the $239.17 portion of the deduction at line 59c of Form 22C and Part VI for their subtraction of discontinued cattle income, the Trustee argues that it cannot be deducted under the Internal Revenue Service ("IRS") National or Local Standards, citing *In re Tuss*, 360 B.R. 684, 698-99 (Bankr. D. Mont. 2007).

With respect to the Treasury Strips the Trustee argues that the evidence, Featherstons' tax returns on Ex. 1, do not support their contention that the Treasury Strips are their children's because Featherstons reported taxable income on Ex. 1, which should have been included on Form 22C, line 9 ("Income from all other sources").  The Trustee argues that Debtors should not be allowed to deduct education aid for their 21-year old son Travis and that their $400.00 figure on Form 22C, line 59b is inconsistent with their actual ongoing expenditure for the remaining son in college.  The Trustee argues that none of the subsections of § 707(b)(2)(A)(ii) allow deductions for an adult child's college expenses.  The Trustee requests the Court (1) deny confirmation and determine that Featherstons failed to show special circumstances to depart from the disposable income requirement based on the CMI from § 101(10A), (2) require Featherstons to include their cattle sale income without deducting cattle expenses because it is not an ongoing business, (3) determine that they may not deduct support for their adult son in college, and (4) require them to include income from the sale of the Treasury Strips.

Debtors in their reply memorandum cite a recent decision from the District of Idaho, *In re*

*Meek*, 370 B.R. 294 (Bankr. D. Idaho 2007), citing the First Circuit BAP's decision in *Kibbe*, 361 B.R. at 312, that their disposable income should be projected forward to refer to income they reasonable expect to receive during the term of the plan, so should not include the Treasury Strips or the cattle income.  Featherstons argue that they have shown that the college expenses they pay for their son disposable income have been demonstrated to be an expense that is reasonable and paid for a significant period of time.  Featherstons ask that the Trustee's objections be overruled and their Plan confirmed.

**II.  § 1325(b) – "Disposable Income".**

It is well established law in this Circuit that for a bankruptcy court to confirm a plan, "each of the requirements of section 1325 *must be present* and the debtor has the burden of proving that each element has been met."  *In re Barnes*, 32 F.3d 405, 407 (9th Cir. 1994); *Tuss*, 360 B.R. at 690; *In re Andrews*, 49 F.3d 1404, 1408 (9th Cir. 1995); *Chinichian v. Campolongo*, 784 F.2d 1440, 1443-44 (9th Cir.1986) (citing *In re Elkind*, 11 B.R. 473, 476 (Bankr.D.Colo.1981)) (emphasis added).

The Trustee's objections raise the issue of the "disposable income" test under § 1325(b)(1)(B) which provides:

> (b)(1) If the trustee . . . objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan –
>
> * * * *
>
> (B) the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to made payments to unsecured creditors under the plan.

*See In re Sutton*, 19 Mont. B.R. 220, 227-28 (Bankr. D. Mont. 2001) (construing § 1325(b)(1)(B)

14

prior to 2005 revisions).

"Disposable income," as defined at § 1325(b)(2), underwent substantial revision in the

Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (Pub. L. 109-8)

("BAPCPA"). BAPCPA became effective for purposes of the instant case on October 17, 2005.

Section 1325(b)(2) now provides, in pertinent part:

> For purposes of this subsection, "disposable income" means current monthly income received by the debtor (other than child support payments, foster care payments, or disability payments for a dependent child made in accordance with applicable nonbankruptcy law to the extent reasonably necessary to be expended for such child) less amounts reasonably necessary to be expended —
>
> > (A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed; and
> >
> > (ii) for charitable contributions (that meet the definition of "Charitable contribution" under section 548(d)(3) to a qualified religious or charitable entity or organization (as defined in section 548(d)(4)) in an amount not to exceed 15 percent of gross income of the debtor for the year in which the contributions are made; and
> >
> > (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

*Tuss*, 360 B.R. at 691; *Tranmer,* 355 B.R. at 241-42.

In *Tuss* and *Tranmer*, both cases focused on specific categories of current expenditures,

while the present cases involve changes in income as well as expenses. *Tuss*, 360 B.R. at 691;

*Tranmer*, 355 B.R. at 242. This Court announced in *Tuss* and *Tranmer* that it will apply a

mechanical test in which its discretion to determine the reasonableness of a debtor's expenses in

calculating disposable income was curtailed by BAPCPA. *Tuss*, 360 B.R. at 692-95; *Tranmer*,

355 B.R. at 242-45; *see Rotunda*, 349 B.R. at 328-29, 329-31, 332; *In re Guzman*, 345 B.R. 640

15

(Bankr. E.D. Wis. 2006); *In re Alexander*, 344 B.R. 742 (Bankr. E.D. N.C. 2006); *In re Barr*, 341 B.R. 181 (Bankr. M.D. N.C. 2006). In the instant cases, under the reasoning set forth in full in *Tuss* and *Tranmer*, this Court holds that it will likewise apply the mechanical test in determining disposable income in both § 1325(b)(1)(B) and § 1325(b)(2) by reference to CMI determined pursuant to § 101(10A) and Form 22C.

Featherstons argue that this Court follows the "minority" view, and should follow the "majority" view as set forth in *Kibbe* and *Hardacre*, which give materially separate effect to the word "projected" immediately preceding "disposable income" in § 1325(b)(1)(B), and which depart from the Form 22C calculation where the debtor's income at confirmation or as reasonably anticipated for the plan commitment period is materially different from the debtor's "disposable income" as defined by § 1325(b)(2). *Kibbe*, 361 B.R. at 311, 314-15; *In re Jass*, 340 B.R. 411, 417-18 (Bankr. D. Utah 2006)); *Hardacre*, 338 B.R. at 721-23. This Court's reasoning is set forth at length in *Tuss* and *Tranmer* and need not be repeated here, except as follows:

> The following language of § 1325(b)(2) plainly states its intent: "For purposes of this subsection, 'disposable income' means ...." To understand the scope of the words "this subsection" at the beginning of § 1325(b)(2), reference is simply made to § 1325(a) which begins "Except as provided in *subsection (b)*." (Italics added). In order to give effect to all the pertinent statutory language, this Court reads "this subsection" in § 1325(b)(2) to mean all of subsection 1325(b), both § 1325(b)(1)(B) and § 1325(b)(2), and thus "disposable income" is defined at § 1325(b)(2) for purposes of determining "projected disposable income" under § 1325(b)(1)(B) to decide the disposable income test. *See, e.g., In re Alexander*, 344 B.R. 742, 749 (Bankr. E.D. N.C. 2006) ("If 'disposable income' is not linked to 'projected disposable income' then it is just a floating definition with no apparent purpose."). This Court's construction gives effect to "disposable income" in both §1325(b)(1)(B) and § 1325(b)(2) in the manner which avoids rendering one superfluous. [*Connecticut National Bank v. Germain*, 503 U.S. 249, 252-54, 112 S.Ct. 1146, 1149, 117 L.Ed.2d 391 (1992). *Rake v. Wade,* 508 U.S. 464, 471-72, 113 S.Ct. 2187, 2192, 124 L.Ed.2d 424 (1993).]

*Tuss*, 360 B.R. at 691-92; *Tranmer*, 355 B.R. at 242.

Recent cases identify not two but three positions on how "projected disposable income" should be calculated.  *In re Nance*, 2007 WL 2028579, *4-*7 (Bankr. S.D. Ill. 2007), cited in *In re Ross*, __ B.R. __, 2007 WL 2683676 at *3-*4 (N.D. Ill.2007), describes *Hardacre* and *Jass* as two separate views, wherein the *Hardacre* view of cases "completely ignore" a debtor's CMI as defined in § 101(10A) in favor of the income listed on Schedule I, while *Jass, Kibbe,* and *Meek* represent the second view where the income from Form 22C is the projected disposable income unless the debtor shows that there has been a substantial change of circumstances rebutting the figures on Form 22C such that they are not commensurate with a fair projection of the debtor's future income.

This Court follows the third approach in *Tuss*, 360 B.R. at 692, and *Tranmer*, 355 B.R. at 243, as did the courts in *Nance* and *Ross*, using the simple mechanical calculation on Form 22C to determine projected disposable income, as mandated by § 1325(b)(2), by reference to the "current monthly income" ("CMI") defined at 11 U.S.C. § 101(10A).  *Nance*, 2007 WL 2028579 at *4-7; *Ross*, __ B.R. at __, 2007 WL 2683676 at *4.

In *Tuss* and *Tranmer* this Court quoted at length the decision in *Rotunda,* including the following:  "The expenses listed in Schedule J and the income in Schedule I are no more accurate than the estimates of disposable income on Form B22C.  Thus, projecting disposable income based on an average of six months' income after certain standard deductions and payment on secured and priority debt is no less realistic than the figures used in Schedules I and J for proposing a feasible plan."  349 B.R. at 331; *Tuss*, 360 B.R. at 694; *Tranmer*, 355 B.R. at 245.  A recent decision from Vermont which calculated projected disposable income by mechanical

application of the means test without regard to the content of Schedules I and J explains further:

> One may question the logic of relying upon historical data, and debate whether it yields a reliable prediction of the Debtors' ability to make plan payments, or constitutes the best formula for computing those payments. But such differences of opinion are based on the policy implications of the amended statute and do not make the statute ambiguous or the result absurd. There is no inherent flaw in calculating disposable income based upon an historical figure, or in using the result of that computation in a forward-looking projection of income through the commitment period. These terms are not superfluous and they are consistent with each other. In BAPCPA, Congress declared that the historical income data from the six months prior to the filing of the bankruptcy petition is a more reliable indicator of a debtor's future financial situation than the income on the day the debtor filed for bankruptcy relief, and has directed courts to adjust their starting point for analyzing Chapter 13 plans accordingly. While this may constitute a dramatic change from pre-BAPCPA policy – and a point upon which reasonable minds may differ – it is well within the prerogative of our Legislative branch to make such changes. It is the role of the Judicial branch to carry them out.

*In re Austin*, __ B.R. __, __, 2007 WL 2264062, at *9 (Bankr. D. Vt. 2007).

This Court sees no sufficient reason to depart from its mechanical test established in *Tuss* and *Tranmer* in the instant cases, but agrees with the court in *Ross* that:

> The three approaches are supported by persuasive arguments and authority. The present lack of either a definition of "projected disposable income" or a clear statutory method or directive for computing the same is at the heart of the problem that has led to the various approaches. The problem cries out for remedial legislation ....

Applying this Court's mechanical test, § 101(10A) provides:

The term "current monthly income" –

> (A) means the average monthly income from all sources that the debtor receives (or in a joint case the debtor and the debtor's spouse receive) without regard to whether such income is taxable income, derived during the 6-month period ending on –

>> (i) the last day of the calendar month immediately preceding the date of the commencement of the case if the debtor files the schedule of current income

18

required by section 521(a)(1)(B)(ii); or

(ii) the date on which current income is determined
by the court for purposes of this title if the debtor
foes not file the schedule of current income required
by section 521(a)(1)(B)(ii); and

(B) includes any amount paid by any entity other than the debtor
(or in a joint case the debtor and the debtor's spouse), on a regular
basis for the household expenses of the debtor or the debtor's
dependents (and in a joint case the debtor's spouse if not otherwise
a dependent), but excludes benefits received under the Social
Security Act, payments to victims of war crimes or crimes against
humanity on account of their status as victims of such crimes, and
payments to victims of international terrorism (as defined in
section 2331 of title 18) or domestic terrorism (as defined in
section 2331 of title 18) on account of their status as victims of
such terrorism.

The Debtors in the above-captioned cases filed their Schedules of current income, so §

101(10A)(A)(i) applies.  The Glikos and Featherstons must therefore include their gross receipts

at Line 3a of Form 22C from the liquidation of their assets.  Featherstons are prohibited from

deducting the $239.17 in discontinued cattle income[6] at Part VI of Form 22C, as that is not an

actual expense under § 707(b)(2)(A)(ii)(I) as described in the instructions in Part VI, or

supported by special circumstances or otherwise under 707(b)(2).

Turning next to the Trustee's objections to the Debtors' deductions of costs and expenses

from their proceeds from the sale of cattle and trailers, the Trustee argues that § 101(10A) does

not permit the deduction of expenses from sale proceeds and Debtors are bound by the statute.

However, the Court notes that "income" is not defined in the Bankruptcy Code at all.  Judge

---

[6]This Court noted in both *Tuss* and *Tranmer* the passage in *Rotunda* that modification of
a plan under § 1329 may be a viable option if income increases or decreases.  *Tuss*, 360 B.R. at
694-95 & n.8; *Tranmer*, 355 B.R. at 345, n.9, quoting *Rotunda*, 349 B.R. at 331.

19

Wedoff's article "*Means Testing in the New § 707(b)*", Am. Bankr. L.J., Vol 79, Issue 2, p. 231,

cited by the Trustee as authoritative, states at 244-45:

> Paragraph A of § 110(10A)[7] [sic] sets out its general rule that all "income" received by the debtor(s) should be included in calculating current monthly income. There is no definition of "income" in the Bankruptcy Code. However, because § 110(10A)(A) [sic] distinguishes between "income from all sources" and "taxable income," it appears to reflect the distinction in the Internal Revenue Code between "gross income," and "taxable income." Accordingly, the Internal Revenue Code should provide general guidance for determining the "income" used in § 110(10A)(A) [sic]. That guidance includes a long list of items that constitute "income," such as compensation for services, business earnings, *gains on dealing in property*, interest, rents, royalties, dividends, alimony and maintenance, pensions, prizes and awards, and unemployment compensation.

(Emphasis added).

The Trustee, having recognized Judge Wedoff's article as persuasive authority, is

unpersuasive in arguing that Glikos cannot deduct the cost of preparing their trailers for sale, or

that Featherstons cannot deduct their business expenses incurred preparing their cattle for sale.

The Trustee is correct that the proceeds from liquidation of those business assets should be listed

on Form 22C, as called for on line 3a, but the Trustee errs in contending that ordinary and

necessary business expenses, as specifically called for at line 3b of Form 22C, should not be

allowed in determining gains on dealing in such assets. Under the Internal Revenue Code, as

recognized by Judge Wedoff, those expenses must be allowed in the amounts disclosed in the

appropriate tax schedules or forms, where business expenses are allowed to be deducted in

determining gains to be entered on Form 1040. The Trustee's objection based upon deduction of

business expenses at line 3b of Form 22C is overruled in both cases.

---

[7]The citation to § 110(10A) is a typo, and should read § 101(10A) throughout the above-quoted excerpt.

20

**Assistance with College Expenses.**

Featherstons list $400 at line 59b of Form 22C in aid for their remaining son in college, but Phyllis testified that they pay only $350.  Even that reduced amount, however, is not allowed as a deduction for an adult child.  Featherstons argue that the $350 in college assistance for their adult child may be included under § 707(b)(2)(A)(ii)(II).  This subsection clearly is inapplicable to Travis Featherston.  It provides:

> In addition, the debtor's monthly expenses may include, if applicable, the continuation of actual expenses paid by the debtor that are reasonable and necessary for care and support of an elderly, chronically ill, or disabled household member or member of the debtor's immediate family (including parents, grandparents, siblings, children, and grandchildren of the debtor, the dependents of the debtor, and the spouse of the debtor in a joint case who is not a dependent) and who is unable to pay for such reasonable and necessary expenses.

Featherstons argue that because Travis is a member of their immediate family and is unable to pay for such expenses, the $350 in college assistance expense should be allowed.  However, the evidence shows that Travis is not "elderly, chronically ill, or disabled", and further did not show that Travis is unable to pay for such reasonable and necessary expenses himself.  Phyllis described Travis as being employed, having scholarships and student aid, for which he was eligible because they did not claim him as a dependent on their tax return, Ex. 1.  Having failed to claim Travis as a dependent in order to qualify for government benefits, Featherstons shall not be allowed to take the opposite position and now claim that he is a dependent and needs money deducted from their disposable income otherwise payable for the benefit of creditors.  Featherstons' argument based on § 707(b)(2)(A)(ii)(II) in support of their college assistance to their adult son is without merit.

The recent decision entered in *In re Goins*, __ B.R. __, 2007 WL 2229047 (Bankr. D.

S.C. 2007) on August 1, 2007, addressed the issue of whether college education and living expenses should be allowed as deductions from disposable income to be paid under a plan, and concluded that under BAPCPA educational expenses for students over 18 years of age are no longer within the scope of reasonable and necessary expenses contemplated by the Bankruptcy Code.  2007 WL 2229047 at *2.

The court surveyed case law prior to enactment of BAPCPA, noting that courts were split as to whether college tuition and support of dependents were reasonable and necessary expenses for a debtor.  *Goins*, 2007 WL 2229047 at *1, citing *In re Riegodedios*, 146 B.R. 691, 693 (Bankr. E.D. Va. 1992) (payment of tuition and living expenses permitted when the debtor's plan made a significant disbursement to unsecured creditors and the student was an upper classman), *In re Gonzales*, 157 B.R. 604 (Bankr. E.D. Mich. 1993) (finding college expenses for two children reasonably necessary when, "the case involves relatively young adults studying for the baccalaureate degrees at a relatively reasonably-priced state university".), and *In re Skipper,* 274 B.R. 807, 820 (Bankr. W.D. Ark. 2002) (holding that debtor's desire to provide his son with a collect education is admirable, but the court cannot hold that a college education is a necessity of life).  The *Goins* court noted that generally no bright line rules apply as to whether any particular expenditure is reasonably necessary.  *Goins*, 2007 WL 2229047 at *1, citing *Harder v. Hartford Life Ins. (In re Bonuchi),* 327 B.R. 428 (Bankr. W.D. Mo. 2005).   The court then noted the effect of BAPCPA on calculating disposable income:

> The 2005 Amendments, significantly altered the methodology for calculating disposable income in Chapter 13 cases.  *See, e.g., In re Cleary*, 357 B.R. 369, 373 (Bankr. D. S.C. 2006) (discussing the calculation of disposable income and finding that private school educational expenses for children under the age of eighteen, once disfavored by the majority of jurisdictions, were brought

within the provisions of the Bankruptcy Code by the 2005 Amendments).  In
*Cleary*, this Court interpreted amended § 707(b)(2)(A)(ii)(IV) to evidence the
Congressional public policy that private school tuition can be a reasonable and
necessary expense.  *Id.*

 "'Disposable income' for above median income debtors is defined as a
debtors 'current monthly income,' also a defined term under § 101(10A), less
amounts reasonably necessary 'to be expended' as determined by § 707(b)(2)(A)
and (B)."  *Id.* at 372, *citing In re Edmunds*, 350 B.R. 636 (Bankr., D. S.C. 2006).
Furthermore, § 1325(b)(3) directs that reasonably necessary expenditures for
above median income debtors, "shall be determined in accordance with
subparagraphs (A) and (B) of section 707(b)(2)."  The pertinent part of §
707(b)(2)(A)(ii)(IV) reads:

> [T]he debtor's monthly expenses may include the actual expenses
> for each dependent child less than 18 years of age, not to exceed
> $1,500 per year per child, to attend a private or public elementary
> or secondary school if the debtor provides documentation of such
> expenses and a detailed explanation of why such expenses are
> reasonable and necessary, and why such expenses are not already
> accounted for in the national Standards, Local Standards, or Other
> Necessary Expenses referred to in subclause (I).

 Section 707(b)(2)(A)(ii)(IV), is to be given its plain and ordinary meaning.
It applies to elementary or secondary school expenses.  It applies to dependent
children less than eighteen (18) years old.  The omission of expenses for a college
education suggests application of the legal maxim *expressio unius est exclusio
alterius*, the expression of one thing is the exclusion of another.  *See, e.g., In re
Shank*, 240 B.R. 216, 225 (Bankr. D. Md. 1999) (finding that the scope of §
507(a)(8)(A)(iii) does not extend to exempt post-petition taxes).

 In this case, the Debtors are above median income debtors and disposable
income is determined under § 1325(b)(3).  Educations expenses for students over
the age of eighteen (18) and college expenses generally are no longer within the
scope of "reasonable and necessary" expenses contemplated by the Bankruptcy
Code.  Because Congress expressed that debtor's expenses may include those of
children under the age of eighteen (18) to attend elementary or secondary school,
expenditures for children over the age of eighteen (18) to those outside the
elementary or secondary school context are excluded.

*Goins*, 2007 WL 2229047 at *2.

The Ninth Circuit has explained the doctrine of *expressio unius est exclusio alterius* in

the context of federal law[8] in *Clark v. Capital Credit & Collection Services, Inc.*, 460 F.3d 1162, 1169 (9th Cir. 2006):

> Because the statute affirmatively designates certain manners of operation, we are counseled that, under the doctrine of *expressio unius est exclusio alterius,* these omissions are the equivalent of exclusions. *See ARC Ecology v. U.S. Dept. of Air Force,* 411 F.3d 1092, 1099-1100 (9th Cir.2005); *In re Gerwer,* 898 F.2d 730, 732 (9th Cir.1990) ("The express enumeration [of an exception] indicates that other exceptions should not be implied."). Nevertheless, we have long held that
>
> > however helpful ... rules of construction may be, the courts will ... "construe the details of an act in conformity with its dominating general purpose, will read text in the light of context and will interpret the text so far as the meaning of the words fairly permits so as to carry out in particular cases the generally expressed legislative policy."
> >
> > *Matheson v. Armbrust,* 284 F.2d 670, 674 (9th Cir.1960) (quoting *S.E.C. v. C.M. Joiner Leasing Corp.,* 320 U.S. 344, 350-51, 64 S.Ct. 120, 88 L.Ed. 88 (1943)); *see also Longview Fibre Co. v. Rasmussen,* 980 F.2d 1307, 1313 (9th Cir.1992) (holding that *expressio unius* "is a rule of interpretation, not a rule of law. The maxim is 'a product of logic and common sense,' properly applied only when it makes sense as a matter of legislative purpose.") (citation omitted).
>
> Moreover, we are not bound by the plain meaning of a statute where its literal application will produce a result "demonstrably at odds with the intention of its drafters." *In re Been,* 153 F.3d 1034, 1036 (9th Cir.1998) (citing *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989)); *see also United States v. Combs,* 379 F.3d 564, 569 (9th Cir.2004) ("[W]e are not required to interpret a statute in a formalistic manner when such an interpretation would produce a result contrary to the statute's purpose or lead to unreasonable results.") (citing *Comm'r v. Brown,* 380 U.S. 563, 571, 85 S.Ct. 1162, 14 L.Ed.2d 75 (1965)).

Applying the doctrine of *expressio unius est exclusio alterius* to §707(b)(2)(A)(ii)(IV),

the omission from that subsection of college education expenses for children over 18 years of age

---

[8]The Fair Debt Collection Practices Act ("FDCPA"). 460 F.3d at 1168.

suggests an exclusion, makes sense as a matter of legislative purpose, and does not produce a result contrary to the statute's purpose.  If Congress had wished to include college expenses for children over 18 years of age in §707(b)(2)(A)(ii)(IV), it could have drafted that subsection accordingly.  Featherstons deduction of $350 for their adult child's college education fails to satisfy the disposable income test.

**Treasury Strips.**

The Trustee objects to confirmation and argues that the $3,776.11 in proceeds from the transfer of U.S. Treasury Strips on 10/25/2006 should have been included in Featherstons' income because that transaction is listed on their tax return, Ex. 1.  The evidence in the form of Phyllis' testimony and Ex. A show, however, that all the Treasury Strips were obtained from money belonging to their children, and were kept in William's name on brokerage accounts as custodian for the children, or as special accounts.  The Trustee offered no evidence which controverted that evidence other than the tax return.

The Court finds and concludes, based on the evidence in the record, that the Treasury Strips were not property of the estate under 11 U.S.C. § 541(a)(1), notwithstanding the broad scope under that subsection.  Section 541(a)(1) begins: "Except as provided in subsections (b) ...."  Section 541(b)(1) specifically provides that property of the estate does not include any power that the debtor may exercise solely for the benefit of an entity other than the debtor".  All the evidence admitted at the hearing shows that the Featherstons exercised power over the Treasury Strips solely for the benefit of their children, including when they liquidated the Treasury Strips triggering a taxable event.  Because of the lack of any evidence showing other legal or equitable interests of the Featherstons in the Treasury Strips, the Court concludes that

25

they are not property of the estate and therefore the return of the Treasury Strips proceeds to their

son, the rightful owner, on 10/25/2006 was not income of the Featherstons under § 101(10A)

which was required to be included in Form 22C.

## CONCLUSIONS OF LAW

1.  This Court has exclusive jurisdiction of the above-captioned Chapter 13 cases under

28 U.S.C. § 1334(a).

2.  Confirmation of the Debtors' Chapter 13 Plans are core proceedings under 28 U.S.C. §

157(b)(2)(L).

3.  Featherstons failed their burden of proof to show that the "disposable income"

requirement under 11 U.S.C. § 1325(b)(1)(B) and § 1325(b)(2), § 1325(b)(3) and §707(b)(2)

when they deducted their cattle income earned in the 6 months prior to the date of filing of their

petition, and when they deducted $350 in support paid to an adult child in aid of college

expenses, at Part VI of Form 22C.

4.  The proceeds from the sale of U.S. Treasury Strips is not property of the estate under

11 U.S.C. § 541(b)(1), and was not income of the Featherstons under 11 U.S.C. § 101(10A).

5.  In computing projected disposable income and current monthly income under §

1325(b)(2) and § 101(10A), Debtors are entitled to deduct expenses incurred to calculate gains

on dealings in property as provided under the Internal Revenue Code.

6.  Glikos satisfied their burden under 11 U.S.C. § 1325(b)(1)(B) and § 1325(b)(2), and §

101(10A), when they deducted their expenses incurred in preparing trailers for sale from the sale

proceeds.  Featherstons are entitled to deduct expenses incurred in preparing cattle for sale from

cattle proceeds received in the 6 months prior to the date of filing of their petition, in determining

26

their current monthly income.

**IT IS ORDERED** separate Orders shall be entered in conformity with the above,

sustaining the Chapter 13 Trustee's objections to confirmation in Case No. 07-60296-13 in part,

and overruling them in part, denying confirmation of Featherstons' Chapter 13 Plan and granting

them ten (10) days to file an amended Plan and Form 22C omitting their deductions for

discontinued cattle income and $350 in support for their adult child for college expenses, and

overruling the Trustee's objections in Case No.  07-60441-13 and directing that a separate Order

be entered confirming the Glikos' Chapter 13 Plan.

                              BY THE COURT

                              HON. RALPH B. KIRSCHER
                              U.S. Bankruptcy Judge
                              United States Bankruptcy Court
                              District of Montana